**In re GRAND JURY SUBPOENAS SERVED FEBRUARY 27, 1984.**

**No. GJ–84–1–JLQ.**

United States District Court,
E.D. Washington.

May 18, 1984.

Robert Whaley, Spokane, Wash., for petitioner.

Bruce Carter, Sp. Asst. U.S. Atty., Francis Burke, Sp. Asst. U.S. Atty., Seattle, Wash., for government.

## MEMORANDUM OPINION AND ORDER

QUACKENBUSH, District Judge.

THIS MATTER is before the court on John Doe's Motion to Quash or Modify two (2) subpoenas *duces tecum* which were served on him February 27, 1984. A hearing was held in Seattle, Washington on April 2, 1984 at which John Doe (hereinafter "petitioner") appeared with his counsel Robert Whaley. Special Assistant United States Attorneys Bruce Carter and Francis Burke represented the government. Subsequently, on May 14, 1984, a telephonic hearing was held in which Mr. Whaley, Mr. Burke and Mr. Carter again participated.

One of the subpoenas was directed to Petitioner in his personal capacity and listed eight (8) categories of requested documents (Attachment A). The other subpoena named Petitioner as "Custodian of Records" for POE and required the production of twenty (20) categories of documents (Attachment B). Petitioner's objections to these subpoenas are based on fourth and fifth amendment grounds. Each of these objections will be addressed after a discussion of the relevant law.

## FIFTH AMENDMENT

The pertinent language of the fifth amendment states that "No person ... shall be compelled in any criminal case to be a witness against himself". Like much of the Constitution, those fifteen words have generated hundreds of thousands (if not millions) of words interpreting the meaning of that clause. Indeed, the highest court of this land has written voluminously in its attempts to establish the scope of the privilege against self-incrimination. In spite of numerous Supreme Court pronouncements (or perhaps because of it) critical questions remain unanswered and the state of the law surrounding the fifth amendment privilege—particularly in the context of a subpoena *duces tecum*—is anything but settled.

The most recent example of this uncertainty appears in *United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). While on the one hand the *Doe* Court did resolve one issue in this area of the law by holding that the business records of a sole proprietorship are not privileged, *id.* at 1242, on the other hand, the opinion underscores the Court's divergent views as to the applicability of the fifth amendment to the contents of an individual's private papers. According to the singular statement of Justice O'Connor, "the Fifth Amendment provides absolutely no protection for the contents of private

papers of any kind." *Id.* at 1245 (O'Connor, J., concurring). But, in sharp contrast to Justice O'Connor's interpretation of the constitutional privilege, Justice Marshall believes "that under the Fifth Amendment 'there are certain documents no person ought to be compelled to produce at the Government's request.'" *Id.*, at 1246 (Marshall, J., joined by Brennan, J., concurring in part and dissenting in part). Understandably, due to such amphibolic guidance from the Court one judge has aptly described the role of the lower federal courts in discerning the present state of the law surrounding the fifth amendment privilege as that of a "tea leaves reader". *United States v. Karp,* 484 F.Supp. 157, 158 (S.D. N.Y.1980). With these preliminary comments, this court's discussion will now turn to the case at hand.

The two subpoenas at issue here raise essentially three questions: (1) whether Petitioner's non-business "personal papers" are privileged;[1] (2) whether Petitioner may assert the "act of production" doctrine in regard to those documents he possesses as custodian for POE;[2] and, (3) whether the compelled act of producing any unprivileged documents would be both a "testimonial communication" and "incriminating".

Each of these questions will be discussed separately.

A. *Non-Business Personal Papers:*[3]

■ As highlighted by the recent contradictory pronouncements of Justices O'Connor and Marshall, 104 S.Ct. at 1245–1246, the extent of the applicability, if any, of the fifth amendment to an individual's non-business personal papers is not clear. Although the Court has provided an analytical template to be used when a subpoena *duces tecum* implicates the fifth amendment, *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), what remains unresolved is whether the same analytical framework is utilized regardless of whether the documents are business or personal.[4] The clues to this mystery lie primarily in *Fisher,* and its progeny.

Prior to *Fisher v. United States,* the prevailing rule was that "the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." *Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974); *see also Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746

1. Initially, petitioner contended that POE was not operated as a partnership and therefore its records were those of a sole proprietorship. Obviously, this argument was made to avoid the holding of *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (partnership records not privileged). Petitioner's Memorandum in Support of Motion to Quash or Modify Subpoenas, Appendix at p. 2. However, the legal efficacy of this partnership/sole proprietorship distinction was removed by the Court's holding in *United States v. Doe,* — U.S. —, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (sole proprietorship business records are not privileged). In light of *Doe,* petitioner now concedes that the contents of any business records in his possession (either those of POE or those of his own) are not privileged for fifth amendment purposes. Thus, the inquiry must focus on petitioner's non-business personal papers.

2. Although the partnership/sole proprietorship distinction is no longer relevant in the context of whether the documents themselves are privileged, the distinction may be important in ap-

plying the "act of production" doctrine. At the April 2, 1984 hearing, counsel for petitioner stated that for the limited purpose of the court's consideration of his Motion to Quash, he would stipulate POE is a partnership.

3. The court's use of the term "non-business personal papers" is intended to encompass all of Mr. Kenney's personal (not those he holds as custodian of POE) papers which are not germane to his activities as a contract broker. Those papers which are closely related to such activities are "business records" and are thus not privileged under *Doe,* 104 S.Ct. at 1242.

4. While this court recognizes that the *Fisher* Court's new analytical framework, discussed *infra,* is, on its face, content neutral (*i.e.,* it does not distinguish between business or personal documents) many jurists (including Justices Marshall and Brennan) and commentators have not accepted such a broad application of *Fisher.* See, e.g., *Doe,* 104 S.Ct. at 1245–1246; *Matter of Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 333–334 (3rd Cir.1982).

(1886). One of the pervasive rationales for this principle was the notion that "the protection of personal privacy is a central purpose of the privilege against compelled self-incrimination." *Fisher*, 425 U.S. at 416–420, 96 S.Ct. at 1583–1586 (Brennan, J., concurring in the judgment) (citing cases).

The *Fisher* majority, however, downplayed the importance of the privacy interests, *Fisher*, 425 U.S. at 399–401, 96 S.Ct. at 1575–1576 (cited in apparent approval in *Doe*, 104 S.Ct. at 1241 n. 8), and instead focused on the precise words of the fifth amendment that "[n]o person ... shall be *compelled* in any criminal case to be a *witness against himself*", 425 U.S. at 396, 96 S.Ct. at 1574 (emphasis by the Court). In so doing, the Justices concluded that the privilege against self-incrimination "applies only when the accused is *compelled* to make a testimonial communication that is incriminating." *Id.* at 408, 96 S.Ct. at 1579. Thus, the Court created a new framework to be used in fifth amendment cases, consisting of three factors—compulsion, testimonial communication and incrimination.

Even if the contents of non-business personal papers are found to be incriminating, a mechanical application of this *Fisher* test would render such material unprivileged either because the documents were not authored by the person asserting the privilege (*i.e.*, not a "testimonial communication") or the documents were not authored under the power of governmental compulsion (*i.e.*, not "compelled"). Because such a result obtains from a mechanical application of *Fisher* many courts have applied *Fisher* narrowly and have declined to subject an individual's private papers to a documentary summons. *E.g., In Re Grand Jury Subpoena Duces Tecum*, 657 F.2d 5 (2d Cir.1981); *In Re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033 (3d Cir. 1980). However, in *Doe*, (involving an individual's business records) the Supreme Court, in reaffirming the necessity for "compulsion" and a "testimonial communication", noted that *Fisher* is not to be given an "unduly restrictive reading". 104 S.Ct. at 1242 n. 9. Indeed, the Court emphasized its point by stating: "If the party

asserting the Fifth Amendment privilege has *voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged.*" *Id.* at 1242 n. 10 (emphasis added); *accord Matter of Grand Jury Empanelled Feb. 14, 1978,* 603 F.2d 469, 476–477 (3rd Cir. 1979).

Since *Fisher*, the Ninth Circuit has not squarely addressed the issue of whether a documentary subpoena may reach an individual's non-business personal papers. On several occasions this circuit protected an individual's business records. *E.g., United States v. Helina,* 549 F.2d 713 (9th Cir. 1977) (individual's business records not subject to I.R.S. summons); *United States v. Cohen,* 388 F.2d 464 (9th Cir.1967) (taxpayer not required to produce accountant's work papers relating to taxpayer's business). However, the holdings of these cases apparently have been undercut by *Doe*. More recent Ninth Circuit cases, although involving primarily business records, have contained language intimating that perhaps this circuit will not now afford a blanket privilege to all non-business personal papers. For example, in *United States v. Osborn,* 561 F.2d 1334, 1338–1339 (9th Cir.1977), the court, in denying a fifth amendment privilege to Osborn's business documents, focused on the fact that the documents were voluntarily prepared and were not testimonial declarations of Osborn since they were not prepared by him. In another case which is more on point, the court stated:

> The Fifth Amendment privilege against self-incrimination protects an individual against forced production of *personal papers and effects, at least to the extent that the act of producing* the documents might serve as a basis for incriminating inferences.

*In Re Grand Jury Proceedings (Hutchinson),* 633 F.2d 754, 756 (9th Cir.1980) (Judge Fletcher) (business records of a trust held not privileged). This circuit seems to have taken the above-quoted language one step further in two cases decided one month apart in 1981. In a unani-

mous opinion authored by Judge Sneed the court noted:

> The Fifth Amendment does not protect against production of corporate records held in a representative capacity, nor does it protect against production of personal papers and effects *unless the act of producing them* would itself serve as the basis for incriminating inferences.

*Baker v. Limber*, 647 F.2d 912, 917 n. 5 (9th Cir.1981) (Emphasis added). (Most of the documents were corporate, but apparently some were personal). In, *United States v. Mackey*, 647 F.2d 898, 900 (9th Cir.1981) the *per curiam* opinion of Judges Wright, Kennedy, and Farris phrased the rule pertaining to documentary subpoenas in these terms:

> The compelled production of a physical object, such as a document, does not implicate the Fifth Amendment *unless it is the act of production itself* which is to be used as incriminating evidence.

(Court found the documents to be corporate records, negating any privilege whatsoever).

■ From the above-cited cases one could reasonably conclude that in this circuit the *contents* of an individual's personal papers are not privileged, and that a valid fifth amendment claim may only be asserted to avoid an incriminating effect from the individual's act of producing the private papers. While such a rule is indeed a giant step away from prior case law which stressed the individual's privacy interest, it may in fact be in step with the current trend as evidenced by *Doe*. Notwithstanding the pendulum's swing away

from privacy interests, this court believes that in some instances privacy is still a factor and "there are certain documents no person ought to be compelled to produce at the Government's request." *Doe*, 104 S.Ct. at 1246 (Marshall, J., joined by Brennan, J., concurring in part and dissenting in part). Accordingly, insofar as the *contents* are concerned, the documents in Petitioner's possession are privileged to the extent they are (1) non-business, (2) authored by him, and (3) contain recorded thoughts so personal that their disclosure would infringe on whatever residual privacy rights remain protected by the fifth amendment.[5] Any of the documents listed in Attachment "A" which Petitioner believes may fit into this category should be submitted to the court for *in camera* review.

**B.  Act   of   Production:   Partnership Records:**

■ As *Fisher* instructs, even though the *contents* of documents may not be privileged, the compelled *act of producing* the documents may implicate the fifth amendment if the act of production involves "testimonial self-incrimination". 425 U.S. at 410–411, 96 S.Ct. at 1580–1581. What the *Fisher* Court did not reveal, *inter alia*, is whether the so-called "act of production" doctrine is applicable when an individual is in possession of documents as the custodian or representative of another entity—in this case the POE partnership. The question then is whether Petitioner, as a POE partner, may refuse to surrender POE's records on the basis of the "act of production" doctrine.[6]

---

**5.** Personal diaries and non-business personal letters may well fall into this category. *See, Fisher*, 425 U.S. at 401 n. 7, 96 S.Ct. at 1576 n. 7; *Couch v. United States*, 409 U.S. 322, 350, 93 S.Ct. 611, 626, 34 L.Ed.2d 548 (1973); *In Re Grand Jury Proceedings (Martinez)*, 626 F.2d 1051, 1054 n. 2 (1st Cir.1980) (non-business, intimate personal papers such as private diaries or drafts of letters or essays *may* be privileged). But, diaries and appointment calendars used for both business and personal purposes may not be privileged. *See, United States v. Mackey*, 647 F.2d at 901 (diary and appointment calendar used in the day-to-day management of a corporation, but containing non-business personal no-

tations, held to be unprivileged business records). Also, the Second Circuit has held that even though a passport is a "personal paper" it is not privileged because it is not a "testimonial document." *United States v. Praetorius*, 622 F.2d 1054, 1062–1063 (2nd Cir.1979).

**6.** This issue is analogous to "standing" in that the court must make a threshold determination as to whether the "act of production" doctrine is properly assertable by petitioner. For the purposes of analysis, the court assumes, without deciding, that the act of producing PEO's records would be both "testimonial" and "incriminating" with respect to petitioner.

██ The starting point in this analysis is the principle that "an individual cannot rely upon the privilege [fifth amendment] to avoid producing the records of a collective entity which are in his possession in a representative capacity, *even if these records might incriminate him personally,"Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974) (emphasis added) (partnership records not privileged). Thus, the Court has made it clear that any coincidental incrimination which flows from unprivileged subpoenaed documents does not abridge the fifth amendment rights of the person incriminated. *See, e.g., Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911) (subpoena requiring production of corporate books was directed to individual corporate officer); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (subpoena requiring production of labor union's records was directed to union officer). Nevertheless, Petitioner opines that such precedent does not foreclose his argument here because the "act of production" doctrine was not explicitly discussed. Thus, Petitioner argues that even though his fifth amendment rights are not implicated by the compelled disclosure of the *contents* of the POE documents, his *act of producing* those documents is compelled, self-incriminating testimony which, as *Fisher* instructs, is proscribed by the fifth amendment.

██ Petitioner's position is not without some support. In *In Re Katz,* 623 F.2d 122, 125 (2d Cir.1980), a grand jury subpoena *duces tecum* was directed to an attorney and called for all documents in his possession relating to "any company owned, operated or controlled by Benjamin Jarvil [his client]." While the court recognized the corporate documents were not privileged, it concluded the attorney could avail himself of the "act of production" doctrine.[7] *Id.* at 126. A more recent case,

also from the Second Circuit is *In Re Grand Jury Subpoenas Duces Tecum,* 722 F.2d 981 (2d Cir.1983). In that case the subpoena was issued to a former corporate president who retained certain company records after leaving its employ. The subpoena sought production of originals or copies of corporate books, records and documents covering a multitude of categories. The circuit court overturned the lower court and held that the "act of production" doctrine was applicable even though corporate documents were involved. Several passages from this opinion are worth quoting:

> The district court ... [chose] instead to accept the government's position that the *Fisher* act of production doctrine simply does not apply to corporate records. We believe that the district court erred in rejecting this contention out of hand solely on the ground that corporate documents were demanded by the subpoena. Under *Fisher* the standard is not the potential incriminating nature and contents of the documents subpoenaed but whether their *mere production would itself tend to incriminate the possessor.*

*Id.* at 986. The court went on to add:

> For the purpose of determining the extent to which a natural person may invoke his Fifth Amendment privilege under *Fisher,* the fact that the subpoenaed documents in his possession were prepared by a corporation is not directly relevant. The *Fisher* doctrine [act of production doctrine] simply does not turn on either content or authorship of the documents; it is the fact, and the circumstances of *possession* that are controlling. *Couch v. United States, supra.* If, as the Supreme Court indicated in *Fisher,* the act of production doctrine applies to one type of otherwise unprivileged document (accountant's workpa-

---

**7.** Arguably, the *Katz* case is readily distinguishable from the one at hand. Here, petitioner, as a partner, is holding POE's records as a representative of the partnership—an entity which itself has no fifth amendment rights. The *Katz* opin-

ion does not mention whether the attorney holding the records is a corporate representative or merely an individual in possession of corporate papers.

pers) it can apply as well to corporate records in an individual's possession.

*Id.* at 987. In other words, according to the Second Circuit, an individual should not be denied the opportunity to assert the act of production doctrine merely because an entity's document's are involved.[8]

Other circuits have reached a contrary conclusion. Relying on *Bellis,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (partner subject to subpoena of partnership records) the Tenth Circuit recently refused to apply the act of production doctrine to an attorney because he was holding the subject files "in a representative capacity for the client." *In Re Grand Jury Proceedings (Vargas),* 727 F.2d 941, 944–945 (10th Cir.1984). Similarly, in rejecting an appeal for act of production protection, the Sixth Circuit held that where the individual directed to produce corporate records did not own the records but merely held them in a representative capacity, no fifth amendment act of production privilege existed. *In Re Grand Jury (Butcher),* 722 F.2d 294 (6th Cir.1983).

■ The Ninth Circuit has apparently not expressly ruled on the question of whether the "act of production" doctrine is applicable when an entity's records are at issue. Yet, several cases from this circuit strongly imply that when the precise issue is presented the circuit may adopt a position similar to the Sixth and Tenth Circuits. In those cases, *United States v. Alderson,* 646 F.2d 421 (9th Cir.1981) (partnership records), *In Re Grand Jury Proceedings (Hutchinson), supra* (corporate records), *United States v. Mackey, supra* (corporate records), and *Baker v. Limber, supra* (records of a trust), the court required the production of the records of collective entities in the possession of an individual. In each case the opinion emphasizes the fact that the fifth amendment privilege is inapplicable because the individual is holding the records as a representative of the enti-

ty. *United States v. Alderson,* 646 F.2d at 423; *In Re Grand Jury Proceedings,* 633 F.2d at 756; *United States v. Mackey,* 647 F.2d at 900; *Baker v. Limber,* 647 F.2d at 917. However strong (or weak) this precedent is, when coupled with the Supreme Court's holding in *Bellis v. United States, supra,* the weight of authority leads this court to conclude that Petitioner may not assert the "act of production" doctrine in regard to any POE partnership records in his possession.

**C.** *Act of Production: Non-Partnership Records:*

■ Even though the "act of production" doctrine is not applicable to any POE documents, it may apply to any records which Petitioner holds in a non-representative capacity if the compelled act of producing the requested documents would be a self-incriminating testimonial communication. *Doe,* 104 S.Ct. at 1242; *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581. Petitioner contends that his production of the non-partnership records would indeed be both "testimonial" and "incriminating" because in responding to the subpoena he would be authenticating the documents, admitting their existence and conceding his possession of them, which, as the Court stated in *Fisher* and reaffirmed in *Doe,* are factors that may implicate the fifth amendment.

In *Fisher* the Court identified the "implicit authentication" problem as being the "prevailing justification for the Fifth Amendment's application to documentary subpoenas", 425 U.S. at 412, 96 S.Ct. at 1582 n. 12. The Court also recognized that "compliance with a subpoena tacitly concedes the existence of the papers demanded and the possession or control by the [person holding the documents]." *Id.* at 410, 96 S.Ct. at 1581. As to whether the tacit averments of existence and possession are "testimonial" and "incriminating" depends on the "facts and circumstances of particular cases." *Id.* at 410, 96 S.Ct. at 1581.

---

**8.** The above-quoted passages may perhaps be a bit deceptive. The words were written by a court which found that the target of the subpoena held the corporate documents "in his person-

al capacity (rather than as a corporate representative)". *Id.* at 987. Whether this fact was critical to the court's conclusion was not revealed.

Some courts have interpreted *Fisher* as standing for the proposition that in regard to "production of evidence other than oral testimony ... the Fifth Amendment privilege ... is very weak". *E.g., In Re Grand Jury Proceedings (Vargas)*, 727 F.2d 941, 943 (10th Cir.1984). Other courts, not treating *Fisher's* "act of production" doctrine so lightly, have upheld an individual's claim of fifth amendment privilege as to the act of producing subpoenaed documents. *E.g., In Re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981, 987 (2d Cir.1983) (remand for determination whether act of production might have self-incriminatory effect); *United States v. Fox*, 721 F.2d 32 (2d Cir.1983) (act of production held to be "testimonial communication", remanded for determination of whether it would be "self-incriminatory"); *United States v. Porter*, 711 F.2d 1397, 1402 (7th Cir.1983)—(implicit authentication held to be "testimonial communication"). The Ninth Circuit, although it has not as yet written extensively on the application of the "act of production" doctrine, has held that compelled production of subpoenaed documents would violate the fifth amendment if the act of producing the documents would authenticate them *and* incriminate the person subpoenaed. *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1114 (9th Cir. 1982).

The Supreme Court's recent opinion in *Doe*, seems to have removed any doubt as to the legal efficacy of the "act of production" doctrine. In refusing to overturn the lower court's finding that the act of producing the documents would involve testimonial self-incrimination, the Court again, as it had done in *Fisher*, and *Andresen v. Maryland*, 427 U.S. 463, 474, 96 S.Ct. 2737, 2745, 49 L.Ed.2d 627 (1976), expressed its concern with the authentication and tacit admission (existence and possession) problems posed by the compelled production of documents: [9]

The Government concedes that the act of producing the subpoenaed documents

might have had some testimonial aspects, but it argues that any incrimination would be so trivial that the Fifth Amendment is not implicated. The Government finds support for this argument in *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). In *Marchetti*, the Court stated that a party who wishes to claim the Fifth Amendment privilege must be "confronted by substantial and 'real', and not merely trifling or imaginary, hazards of incrimination." *Id.*, at 53, 88 S.Ct. at 705; see *United States v. Apfelbaum*, 445 U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980). On the basis of the findings made in this case we think it clear that the risk of incrimination was "substantial and real" and not "trifling or imaginary." Respondent did not concede in the District Court that the records listed in the subpoena actually existed or were in his possession. Respondent argued that by producing the records, he would tacitly admit their existence and his possession. Respondent also pointed out that if the Government obtained the documents from another source, it would have to authenticate them before they would be admissible at trial. See Fed.R.Evid. 901. By producing the documents, respondent would relieve the Government of the need for authentication. *These allegations were sufficient to establish a valid claim of the privilege against self-incrimination.* This is not to say that the Government was foreclosed from rebutting respondent's claim by producing evidence that possession, existence, and authentication were a "foregone conclusion." *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. In this case, however, the Government failed to make such a showing.

*Doe*, 104 S.Ct. at 1243, n. 13 (emphasis added).

Like the respondent in *Doe*, Petitioner argues that by producing the subpoenaed

---

**9.** Although the precedential value of footnote jurisprudence may be limited, the footnote quoted here represents the most current thoughts

from a Court still in the process of defining the parameters of the "act of production" doctrine. For this reason, it is cited here in its entirety.

personal records he would "tacitly admit their existence and his possession," of them (which he does not concede) and "relieve the Government of the need for authentication."[10] *Id.* at 1243, n. 13.

1. *Existence and Possession:*

In *Doe,* "existence and possession" were material issues. The five subpoenas issued therein sought business records of several sole proprietorships allegedly operated by "Doe". These businesses were under investigation for alleged corruption relating to the awarding of county and municipal contracts. Apparently, the government was unable to establish a connection between "Doe" and the businesses. Thus, had "Doe" been compelled to produce the subpoenaed records he would have furnished the government with the "missing link" between him and the businesses by acknowledging the existence of the documents and his possession and control over them. *Matter of Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 335 n. 12 (3rd Cir.1982), aff'd in part, rev'd in part sub nom. *United States v. Doe,* — U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). In light of this, the Supreme Court stated "we think it clear that the risk of incrimination was 'substantial and real' and not 'trifling or imaginary.'" *Doe,* 104 S.Ct. at 1243, n. 13. Therefore, "Doe's" fifth amendment act of production claim was valid. *Id.*

■ In the present case, it is not so clear that the tacit averments of "existence and possession" pose a "substantial and real" threat to Petitioner. The "missing link" problem does not seem applicable here and has not been argued by Petitioner. In fact, Petitioner has not made a showing as to how the "existence and pos-

session" aspects of a compelled production might tend to incriminate him: "[Petitioner] is not exonerated from [responding to the subpoena] merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his [objection] is justified...." *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Accordingly, Petitioner will be given the opportunity, *in camera,* to show how the "existence and possession" aspects of his production of the requested documents pose a "substantial and real" risk of self-incrimination.

■ The "existence and possession" implications raise another concern which is somewhat related to the fourth amendment issue discussed *infra.* While it may be a "foregone conclusion", *Fisher, supra,* that most individuals possess records relating to credit cards, telephone bills, and bank accounts, it is not a "foregone conclusion" as to specifics of these general categories. For this reason, compliance with a subpoena such as the one directed to Petitioner personally, which requests "all bank records", "telephone toll records" and "credit card records", may well add to the "sum total of the Government's information," *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581, by providing specific information such as the name of the banks at which his accounts exist, the existence and identity of the types of credit cards and the telephone number(s) for which records exist. Furthermore, specific documentary information about "savings and money market accounts" and "loan records" could reveal the existence and identification of such accounts and loans, which may be informa-

---

10. Petitioner also argues that complying with the POE subpoena would require him to "characterize certain records and draw conclusions and inferences as to incriminating facts." Memorandum In Support of Motion To Quash or Modify Subpoenas at page 8. For example, request numbers 9 and 16 of the POE subpoena seek documents "showing direct and indirect compensation" or "relating to anything of value received by the company either directly or indi-

rectly." Due to this court's conclusion that the act of production doctrine is inapplicable to the POE records, it is not necessary for the court to address the "characterization" problem raised by petitioner except to say that petitioner is certainly not required to segregate any produced documents into categories or identify them as being responsive to a specific government request.

tion the government does not already have, *i.e.* not a "foregone conclusion." Such information could undoubtedly be both "testimonial" and "incriminating" in the context of a criminal tax investigation. *United States v. Fox*, 721 F.2d 32, 37–38 (2d Cir. 1983). For fifth amendment purposes, such a fishnet subpoena is too broad.

■ In response to the court's expressed concern in this regard the government filed an affidavit which specifically identifies certain bank accounts, credit card accounts, credit accounts and telephone and telex numbers (Ct.Rec. 11). As to information contained in the affidavit, the government has met its burden of rebutting a claim of a "substantial threat of self-incrimination" by "producing evidence that possession [and] existence ... [are] a 'foregone conclusion.'" *Doe*, 104 S.Ct. at 1243, n. 13.

#### 2. *Authentication:*

■ The "implicit authentication" aspect of the compelled production of documents is premised on the theory that by production the producer of documents may become "the voucher of their genuineness".[11] *Fisher*, 425 U.S. at 412 n. 12, 96 S.Ct. at 1582 n. 12 (quoting *People v. Defore*, 242 N.Y. 13, 27, 150 N.E. 585 (1926) (Cardoza, J.)). An implicit voucher as to genuineness (authenticity) is a testimonial communication; but it implicates the fifth amendment only if it is also self-incriminatory:

> Clearly, under *Fisher*, production under compulsion of the order may or may not amount to authentication, and, if it does, would not necessarily be a violation of the Fifth Amendment.
>
> If, as to a particular document, an appellant believes that his producing it may, by authenticating it, incriminate him, he must make a showing to that effect, so that the court can evaluate it.

*F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir.1982).

The question of when "implicit authentication" poses a substantial threat of self-incrimination is not readily answered. Some have argued that when implicit authentication is involved the threat of self-incrimination is necessarily present, regardless of whether the government could authenticate the documents from an independent source. The basis for this position is that "the protection against self-incrimination cannot ... turn on the strength of the Government's case". *Fisher v. United States*, 425 U.S. at 429, 96 S.Ct. at 1590 (Brennan, J., concurring in judgment); *Matter of Grand Jury Empanelled March 19, 1980*, 541 F.Supp. 1, 3 (D.N.J.1981) (aff'd, 680 F.2d 327 (3rd Cir.1982), aff'd in part, rev'd in part sub. nom. *United States v. Doe*, —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984)) ("[ones] constitutional rights should not rise or fall with the strength of the government's case"). Others have found that the threat of self-incrimination is lacking where the documents can be authenticated by means independent of the producer's act of production. *United States v. Fishman*, 726 F.2d 125, 127 (4th Cir.1983). Statements from the Supreme Court seem to support the latter position.

In *Doe*, the Court noted that a valid claim against self-incrimination may be rebutted by the government's production of evidence that "authentication [is] a 'foregone conclusion.'" *Doe*, 104 S.Ct. at 1243 n. 13. The underlying rationale for this concept would appear to be that if a document's *production* does not meaningfully contribute to the government's evidence, it cannot be said to represent a substantial threat of self-incrimination.

■ At the April 2, 1984 hearing in Seattle, the government stated for the record that some of the documents requested in Petitioner's personal subpoena (bank

---

**11.** The *Fisher* court recognized that when the producer did not prepare the documents he would not be competent to vouch for their accuracy or authenticate them. In such cases "production would express nothing more than the tax payer's belief that the papers are those described in the subpoena" and have only minimal testimonial significance. 425 U.S. at 412–413, 96 S.Ct. at 1581–1582. *But see, United States v. Fox*, 721 F.2d 32, 39–40 (2d Cir.1983).

and credit card records) could (and would) be authenticated by means independent of any implicit authentication resulting from Petitioner's production of the documents. While the government's offer to be foreclosed from using the incriminatory aspects of Petitioner's act of production is indeed tempting, such "constructive use immunity" is not within the jurisdictional powers of this court. *Doe*, 104 S.Ct. at 1244. Nevertheless, as to the information contained in the government's affidavit (Ct. Rec. 11) the government has rebutted the "implicit authentication" aspect of a fifth amendment claim by producing evidence that authentication is a "foregone conclusion." *Doe*, 104 S.Ct. at 1243, n. 13.

REQUIRED RECORDS EXCEPTION:

Item number two (2) of the subpoena directed to Petitioner personally requires production of "copies of your personal tax returns for tax years 1978 to the present." The government argues that tax returns are "required records" and are thus outside the scope of fifth amendment protection.

██ Governmentally-required records have long been held immune from the fifth amendment privilege against self-incrimination. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). The Supreme Court has established three criteria for determining when a record is a "required record": (1) the purpose of the record-keeping requirement must be essentially regulatory; (2) the records must be of the type customarily kept; and (3) the records must have assumed public aspects which render them analogous to public documents. *Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713–714, 19 L.Ed.2d 906 (1968); *United States v. Rosenberg*, 515 F.Supp. 190, 200 (9th Cir.1975).

The government has cited no controlling authority in support of its position that tax returns are within the "required records exception." Contrary to the government's memorandum, *Doe* did not "[note] that tax returns and W–2 statements are documents falling within [the required records exception]." In fact, although the district court had held that tax returns and W–2 statements were within the "required records exception," that issue was not appealed and was thus not before the *Doe* Court: "We therefore understand that this case concerns only business documents and records not required by law to be kept or disclosed to a public agency." 104 S.Ct. at 1240 n. 3. There are, however, at least two other cases which suggest that tax returns are "required records"; *In Re Doe*, 711 F.2d 1187, 1191 (2d Cir.1983) (W–2 Form) and *United States v. Fox*, 554 F.Supp. 422, 425–426 (S.D.N.Y.1983) rev'd on other grounds, 721 F.2d 32 (2d Cir.1983). This court, however, does not have to reach that issue since at the April 2 hearing Petitioner's counsel conceded that the tax returns are not privileged.

FOURTH AMENDMENT AND
FED.R.CRIM.P. 17

In addition to the fifth amendment grounds discussed above, Petitioner objects to the subpoenas as being violative of both the fourth amendment and Fed.R.Crim.P. 17(c). As to the latter, Petitioner argues that the subpoenas are "unreasonable and oppressive." As to the former, he contends the subpoenas violate the fourth amendment by requesting documents not relevant to the grand jury's investigation (*e.g.* POE business records not related to the nuclear industry) and by not specifically describing the documents sought with reasonable particularity.

██ There is no doubt that a grand jury subpoena *duces tecum* must pass constitutional muster. However, the question is what are the applicable standards? While it is true that earlier Supreme Court cases subjected subpoenas *duces tecum* to traditional fourth amendment standards of specificity and particularity, *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), the Court appears to have moved away from the strict search-warrant-type requirements and toward a more amor-

phous requirement of "reasonableness."[12] *See, United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *United States v. Dionisio,* 410 U.S. 1, 11–12, 93 S.Ct. 764, 770–771, 35 L.Ed.2d 67 (1973); *Oklahoma Press Publication Co. v. Walling,* 327 U.S. 186, 208–209, 66 S.Ct. 494, 505–506, 90 L.Ed. 614 (1946). Nevertheless, relevancy and overbreadth are factors which should be considered in a "reasonableness" analysis. *Oklahoma Press Publishing Company v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (administrative subpoena); *United States v. Boggs,* 493 F.Supp. 1050, 1052 (D.Mont.1980).

■ The rule governing subpoenas *duces tecum* in "criminal proceedings" is Fed. R.Crim.P. 17:

> (c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. *The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.* The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

Even though a grand jury may not technically be a "criminal proceeding," the Supreme Court has stated that Rule 17(c) is applicable to grand jury subpoenas *duces tecum.* *United States v. Calandra,* 414 U.S. 338, 346 n. 4, 94 S.Ct. 613, 619 n. 4, 38 L.Ed.2d 561 (1974). Consequently, in addition to the constitutional limitation on the grand jury's subpoena power, the court, through Rule 17(c) may exercise its super-

visory power over the issuance of subpoenas. *Id.*

Some circuits have exercised this supervisory power broadly. *In Re Grand Jury Proceedings* (Schofield) 486 F.2d 85 (3rd Cir.1973). *Schofield* established the requirement that, if challenged, the government must make a preliminary showing "that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction and is not sought primarily for another purpose." *Id.* at 93.

■ The Ninth Circuit, however, has expressly rejected *Schofield* and views the district court's grand jury supervisory powers narrowly. *In Re Grand Jury Proceedings* (Hergenroeder), 555 F.2d 686 (9th Cir. 1977). For example, in denying the subpoenaed party's request that the government be required to make a preliminary showing of need and relevance, this circuit stated: "No affidavit of relevance and need must be introduced; legitimate purpose may be derived from the fact that a subpoena is necessary to a legitimate pursuit and the presumption that the government obeys the law." *In Re Grand Jury Proceeding,* 721 F.2d 1221, 1223 (9th Cir.1983) (citing *Hergenroeder, supra,* in approval). Aside from setting some boundaries on this court's supervisory powers, this circuit has not shed much light on the constitutional "reasonableness" standard or the Rule 17(c) "oppressive and unreasonable" prohibition. However, in one case not involving a grand jury subpoena, our circuit ruled that a subpoena which sought "all files, records, correspondence, writings, interoffice communications, interagency communications, and reports relating to the investigation of Walter C. Wencke ..." was properly quashed as being overly broad. *United States v. Wencke,* 604 F.2d 607, 612 (9th Cir.1979). The applicable standard for constitutional and Fed.R.Crim.P. 17(c)[13] ap-

---

**12.** Some courts have suggested the prohibition against an "unreasonable" subpoena *duces tecum* now rests more appropriately on the due process clause than on the fourth amendment. *In Re Horowitz,* 482 F.2d 72 (2d Cir.1973).

**13.** The Supreme Court has articulated a four part "unreasonable or oppressive" test to be used when a subpoena is challenged pursuant to Fed.R.Crim.P. 17(c). *United States v. Nixon,* 418 U.S. 683, 698–699, 94 S.Ct. 3090, 3102–3103, 41

pears to be simply one of "reasonableness."

Mindful of this court's limited grand jury supervisory powers and applying a "reasonableness" standard, this court concludes that the two subpoenas at issue here do not offend the constitution or Fed. R.Crim.P. 17. This court will not limit the scope of the grand jury's inquiry to only those documents relating to the nuclear industry. Even though the subpoenas are "reasonable," several clarifications of terms in the "Definitions" section on page 1, Exhibit A of Attachment "B" are necessary. "WPPSS ... officers, directors employees and agents" shall mean only those current or former officers, directors, employers and agents presently known to Petitioner. Also, as regards documents of "The Company," Petitioner is only required to produce those "company" documents over which he has constructive possession or control.

### SUMMARY

To summarize, the court concludes that (1) Petitioner may claim a fifth amendment privilege as to the contents of only those non-business documents authored by him which contain thoughts so personal that

disclosure would infringe his right to privacy; (2) Petitioner may not assert the "act of production" doctrine as to any documents he holds in a representative capacity; (3) as to those documents listed in Attachment A, Petitioner must provide the documents about which there is no dispute (item numbers 2 and 8) and those documents requested in item numbers 3, 4 and 5 for which the government has produced evidence (Ct.Rec. 11) showing that existence and authentication is a "foregone conclusion"; and, (4) with the definitional modifications as set forth above, the court concludes that the scope of the subpoenas is "reasonable."

Accordingly, Petitioner is DIRECTED to produce those subpoenaed documents for which his claim of fifth amendment privilege has been rejected. Those documents shall be delivered to the United States Attorney's Office, Room 851, United States Courthouse, Spokane, Washington by 4:30 P.M., May 21, 1984. Any documents for which Petitioner continues to assert a fifth amendment privilege consistent with this opinion (either because of the "content" or the "act of production") shall be submitted forthwith for an *in camera* inspection.

IT IS SO ORDERED.

---

L.Ed.2d 1039 (1974) (post-indictment subpoena). But, since the principal purposes of Rule 17(c) are (1) to prevent a subpoena *duces tecum* in *criminal cases* from being used as a discovery device and (2) to provide each party an opportunity, before trial, to inspect the other party's documentary evidence *Id.; United States v. Layton,* 90 F.R.D. 514 (N.D.Ca.1981) (applying *Nix-*

*on* test to post-indictment subpoena), it would be inappropriate to impose such restrictions on the grand jury, whose very function is to investigate and probe. *But see, In Re Grand Jury Proceeding (Bardier),* 486 F.Supp. 1203, 1210 (D.Nev.1980) (applying *Nixon* test to grand jury subpoena).

# 1020

**United States District Court**

| DISTRICT |
| --- |
| EASTERN DISTRICT OF WASHINGTON |

JOHN DOE

SUBPOENA FOR

☐ Person

☒ Document or Object

**YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the location, date, and time specified below to testify before the Grand Jury in the above entitled case.

AT United States Courthouse
825 JADWIN AVE.
Washington
RICHLAND, 99352

COURTROOM

Room 178

DATE AND TIME

March 5, 1984
at 9:30 a.m.

**YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):[1]

Records and documents as requested on the attached Exhibit A of this subpoena.

*Please see additional information on reverse*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

J. R. FALLQUIST

DEPUTY CLERK

Bruce A. Anderson

This subpoena is issued on application
of the United States of America by:

| DATE |
| --- |
| January 31, 1984 |

CR 8302101

NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY
FRANCIS J. BURKE JR., AUSA

applicable, enter "none."

For the time period January 1, 1978 to the present:

1. All records of POE in your possession, custody or control.
2. Copies of your personal tax returns for tax years 1978 to the present.
3. All bank records, including all checking, savings and money market account records, monthly statements, bank drafts, cashier's checks, deposit slips, and loan records.
4. Telephone toll records.

5. Credit card records.

6. Correspondence, diaries, appointment books relating to Nor-Tec or any other business.

7. All travel records relating to POE or any other business.

8. All documents which refer or relate to Companies A, B, C, D, E, F, or G.

   a. All contracts with any of the above firms

   b. All consulting agreements with any of the above firms

   c. All payments received from the above firms

   d. All invoices provided to the above firms

   e. All correspondence to or from the above firms

   f. All minutes of meetings with the above firms.

ATTACHMENT B

SUBPOENA TO TESTIFY BEFORE GRAND JURY

SPOKANE, WASHINGTON

## United States District Court

| | DISTRICT    EASTERN DISTRICT OF WASHINGTON |

John Doe
Custodian of Records
For POE

SUBPOENA FOR

☐ Person

xx☒ Document or Object

YOU ARE HEREBY COMMANDED to appear in the United States District Court at the location, date, and time specified below to testify before the Grand Jury in the above entitled case.

| PLACE | COURTROOM |
|---|---|
| United States Courthouse   825 JADWIN AVE.   Washington   RICHLAND   99352 | Room 178 |
| | DATE AND TIME |
| | March 5, 1984 |
| | at 9:00 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):[1]

Records and documents as requested on Attachment A of this subpoena.

[1] Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| | DATE |
|---|---|
| J. R. FALLQUIST | January 31, 1984 |
| DEPUTY CLERK | |
| Bruce A. Anderson | CR 8302101    jg |
| This subpoena is issued on application of the United States of America by: | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY<br>FRANCIS J. BURKE, JR., AUSA |

[1] not applicable, enter "none."

## IDENTIFICATION OF DOCUMENTS

To insure full compliance with this subpoena and to facilitate the return of the documents, each document produced should be identified with initials of the Company and numbered consecutively. It would also be appreciated if the documents called for by each paragraph of the subpoena were placed in a separate file folder or other enclosure, marked with the Company's

name, the date of the subpoena, and the paragraph of the subpoena to which the documents respond.

Our experience has been that the foregoing system of document identification will insure the prompt return of the documents demanded herein when they are no longer required.

## FOOTNOTES

In lieu of the documents demanded by paragraphs marked with an asterisk (*) a list, memorandum or other document containing the information demanded may be submitted; provided, however, that the list, memorandum or other documents submitted in lieu of the documents demanded is prepared by, or under the direct supervision of, a duly authorized officer of the Company who certifies by affidavit the accuracy and completeness of the information supplied, and provided further that the documents demanded are maintained intact and available for production, upon request, to the current grand jury, any successor grand jury, or to counsel for the United States in any litigation to which the United States is a party which may result from this or any successor grand jury investigation.

## EXHIBIT A

### INSTRUCTIONS

1. Original records shall be produced to the Grand Jury on the date shown on the subpoena, supported by testimony of a qualified custodian of records.

2. If any document is withheld under claim of privilege, a chart reflecting author, addressee, date, other recipients, subject matter and basis of the privilege shall be prepared and provided to the Grand Jury.

3. If any document cannot be produced to the Grand Jury because it is necessary for use in the day-to-day operations of the Company, arrangements must be made to secure the documents against loss or destruction, and alternative arrangements must be made for production of the documents to agents of the Grand Jury.

## DEFINITIONS

1. "WPSS" shall include the Washington Public Power Supply System and all of its officers, directors, employees and agents, specifically including Burns and Roe, Inc., United Engineers & Constructors, Ebasco Services, Inc., and Bechtel Corporation.

2. "The Company" shall include the recipient of this subpoena (POE) as well as its subsidiaries, divisions, branches, affiliates, parents, partners, directors, officers, employees, agents, partnership, joint ventures in which the recipient is or has been entitled to receive a share of any profits, its attorneys or accountants.

3. "Relevant time period" shall include the period January 1, 1978, to the present.

4. "Documents" of "Records", as used herein, shall include originals, copies or drafts of any type of writings, drawings, graphs, charts, photographs, phonorecords, computer data, or other data compilations from which information can be obtained, translated, if necessary, by the respondent into a reasonably usable form.

### DOCUMENTS REQUIRED

1. Each income tax return filed by the Company for tax years ending in 1977, 1978, 1979, 1980, 1981, 1982, and 1983.

2. All journals (or other books of original entry), and ledgers, including subsidiary ledgers, cash receipts journal, general journal, cash payment slips, cancelled checks and check registers of the Company during the relevant time period, and all documents supporting such disbursements or receipts.

* 3. Documents showing who performed the bookkeeping functions and prepared the financial statements of the Company during the relevant time period.

4. All telephone bills and telephone toll records in the Company's possession, custody and control.

* 5. Books, lists, or other documents in the Company's possession, custody or control sufficient to show the names, addresses, telephone numbers and social security numbers of each of its employees during the relevant time period.

6. All bank account records in the Company's possession, custody or control, including but not limited to monthly statements, deposit slips, withdrawal slips, and cancelled checks which refer or relate to the relevant time period.

* 7. Documents sufficient to show all bank accounts of the Company during the relevant time period, including account number and address.

8. All credit card records in the Company's possession or control, including but not limited to monthly statements and cancelled charge slips.

9. All records showing transactions between the Company and its partners and employees during the relevant time period, including documents showing direct and indirect compensation, remuneration, dividends, bonuses, interest, profits and employment contracts.

10. All contracts between the Company and its customers and/or clients during the relevant time period, specifically including all WPPSS contractors and subcontractors.

11. All correspondence, notes, memoranda, lists, agenda, proposals, reports and meeting minutes concerning negotiations between the Company and its customers and/or clients.

12. All travel and expense vouchers and other documents containing records of expense (together with all documents attached thereto or in support or explanation thereof).

13. All appointment books, calendars, diaries, day-timers or notebooks prepared or used in the course of the Company's business.

14. All directories, files, lists or other documents containing names, addresses or telephone numbers prepared or used in the course of the Company's business.

15. All documents relating to any estimate by the Company, including all preliminary or draft estimates relating to bidding or change order work relating to any contract on WPPSS Plants 1, 2, 3, 4, and 5, including but not limited to workups, spread sheets, projections of anticipated or tabulations of actual, labor, equipment or material costs.

16. All records relating to anything of value received by the Company either directly or indirectly, from any individual, entity, or other contractor employed by WPPSS on Projects 1, 2, 3, 4 or 5 during the relevant time period.

17. All correspondence between the Company and WPPSS during the relevant time period.

18. All records relating to anything of value paid by the Company either directly or indirectly to any individual, entity or other contractor employed by WPPSS on Projects 1, 2, 3, 4 or 5 during the relevant time period.

19. All documents which refer or relate to Companies A, B, C, D, E, F or G.
   (a) All contracts with any of the above firms.
   (b) All consulting agreements with any of the above firms.
   (c) All payments received from the above firms.
   (d) All invoices provided to the above firms.
   (e) All correspondence to or from the above firms.
   (f) All minutes of meetings with the above firms.

20. All documents which refer or relate to contracts, communications, or conversations of any type with WPPSS by any employee, partner or agent of the Company.