9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruth DEBOLT, Defendant-Appellant.
 No. 93-5046.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before MILBURN, RYAN and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Ruth Pauline DeBolt appeals the district court's judgment finding her guilty of criminal contempt in violation of 18 U.S.C. Sec. 401, as a result of her failure to obey a subpoena in a criminal proceeding in the Western District of Tennessee. On appeal, the issues presented are (1) whether the district court erred in finding that the subpoena issued in this case was a valid and proper subpoena, and (2) whether the district court erred in finding that the defendant was guilty of contempt for failing to respond to the subpoena. For the reasons that follow, we affirm.
 
 I.
 
 2
 The judgment of contempt in this case arose out of the trial in another criminal case, United States v. Robert Scott, et al., Cr. No. 92-20037-G (W.D.Tn.). The defendant in that case, Scott, and others were charged with various offenses including: conspiracy in violation of 18 U.S.C. Sec. 371; violations of the Mann Act involving adult females and a minor female under 18 U.S.C. Secs. 2421, 2422, and 2423; obstruction of justice through physical force, intimidation and threats toward a witness in violation of 18 U.S.C. Sec. 1512(b); and interstate travel in aid of racketeering activity in violation of 18 U.S.C. Sec. 1952. Defendant Scott was convicted on October 31, 1991, following a jury trial.
 
 
 3
 Defendant Scott was a "pimp" who, accompanied by various female prostitutes, including a minor female, traveled from Toledo, Ohio, to Memphis, Tennessee, for the purpose of soliciting on the streets of Memphis. Scott was arrested on January 1, 1991, at a motel in Memphis after the minor female was beaten, called her mother in Ohio, and her mother notified the Memphis police department. Defendant DeBolt, who had previously been convicted of prostitution, and the other women who were found with Scott were questioned by law enforcement officials on January 2, 1991, about their activities as well as those of the minor female.
 
 
 4
 On January 4, 1991, defendant DeBolt was served with a subpoena issued by a federal grand jury, requiring her to appear before the grand jury in Memphis and testify concerning the Scott case. Subsequently, on January 9, 1991, the government entered into an agreement with defendant, who was represented by appointed counsel, whereby any statements made by defendant before the grand jury would not be used against her in a prosecution by the United States. That same day, defendant DeBolt testified before the grand jury.
 
 
 5
 On August 12, 1991, a subpoena was issued to defendant ordering her to appear in Memphis, Tennessee, at 9:00 a.m. on Monday, September 16, 1991, in connection with the trial in the Scott case which was scheduled to begin on that date. The subpoena was served on defendant at her residence in Toledo, Ohio, on September 11, 1991. Defendant did not comply with the subpoena, and on September 17, 1991, the clerk of the district court issued a warrant for her arrest.
 
 
 6
 Defendant was taken into federal custody on the arrest warrant on January 8, 1992. That same day, the district court issued an order directing defendant DeBolt to show cause why she should not be held in contempt of court. Defendant made her initial appearance on the show cause order on January 31, 1992. At defendant's initial appearance on the show cause order, defendant's counsel argued that the trial subpoena which was served on defendant was invalid. Specifically, defense counsel asserted that the subpoena was invalid because the subpoena directed defendant to appear at 9:00 a.m. on September 16, 1991, at the United States Attorney's office which was located on the tenth floor of the federal building in Memphis. However, the portion of the subpoena which was to have designated a specific courtroom for defendant to appear was blank instead of designating the courtroom on the eleventh floor of the federal building in Memphis, the location of the Scott trial.
 
 
 7
 The district court requested that the parties brief the issue of the validity of the subpoena served on defendant. Following the submission of the briefs by the parties, the district court entered an order on June 22, 1992, finding that the subpoena was valid. In its order the district court stated that
 
 
 8
 [t]he subpoena does not mention anywhere that the witness is to appear on the 11th floor of the Federal Building at 9:30 a.m. for the trial of Robert Scott. Rather, the only specific location and time is 9:00 a.m. at the office of the United States Attorney on the 10th floor of the Federal Building.
 
 
 9
 J.A. 9. The district court further found that the subpoena was valid and that it did "not represent an abuse of power by the U.S. Attorney's office and was not used to gain a pre-trial interview" with defendant. J.A. 10.
 
 
 10
 On August 21, 1991, an evidentiary hearing was held on the show cause order. Defendant DeBolt was the only witness to testify. Prior to her testimony, the parties stipulated that she was indigent and that the government was aware of her indigency by virtue of the fact that she had been appointed counsel by the district court. The parties also stipulated that the government did not inform defendant's appointed counsel that she had been served with a subpoena. Finally, the parties also stipulated that when the subpoena was served on defendant, there was no bus or airline ticket attached to it and no money for transportation attached to the subpoena.
 
 
 11
 On direct examination, defendant admitted receiving the subpoena, stating:
 
 
 12
 All I know is two men come (sic) to my house and handed me a piece of paper and said, "This is a subpoena," and walked out.
 
 
 13
 J.A. 70-71. However, on cross-examination defendant admitted:
 
 
 14
 I don't remember what the paper [the subpoena] looked like. All I know, I got a piece of paper in my hand, and as they walked out, I tore it up.
 
 
 15
 J.A. 76 (emphasis added). Defendant further admitted that she could have obtained the information necessary for compliance with the subpoena from the document itself, but that it was her action in tearing up the subpoena which prevented her from doing so.
 
 
 16
 Defendant was also cross-examined about two letters which she had written and which had been intercepted by federal agents who were searching for her both before and during the Scott trial. Defendant admitted that she had personally written both letters in Lansing, Michigan, where she was hiding from the authorities, and that she had signed both letters with the alias "Shakyla Scott." J.A. 78.
 
 
 17
 The first letter was addressed to defendant's boyfriend, Jim Baker. At one point in the letter defendant wrote: "Jim, I'm doing this for us and Robb." J.A. 82. Further on in the letter she wrote: "Stay strong for Robb and me." J.A. 82. Defendant then admitted that Robb was Robert Scott, the defendant in the Scott case.
 
 
 18
 The second letter was addressed to Senita Carr, a friend of the defendant who had been questioned about the Scott case by the F.B.I. In her letter to Carr, defendant wrote:
 
 
 19
 I'm not anywhere around Toledo, so don't worry. I heard they want to talk to you. You know who told them your name. Sissy, that bitch.
 
 
 20
 J.A. 88. Defendant then admitted that the "they" and "them" she referred to in her letter was the F.B.I. and that "Sissy" was Claudia Tinsley, a witness who had been taken into custody and had gone to Memphis to testify against Robert Scott. Finally, the defendant also admitted on cross-examination that she had given birth to a child, a daughter, fathered by Robert Scott, that she had lost custody of her child, and that while the Scott case was pending, she was seeking to regain the custody of her child.
 
 
 21
 Following the August 21, 1992, hearing, the district court held:
 
 
 22
 Let me tell you what I think about this. I think that the evidence is very strong that Ms. DeBolt did willfully disregard the subpoena. I believe she is in contempt of court. Certainly, Ms. DeBolt is a sad figure who has a lot of problems.
 
 
 23
 I have read both of the letters. I have listened to her testimony. "Yes, I received the subpoena. I tore it up." It becomes rather academic if she would have known what to do with it if she had sufficient educational skills to ascertain compliance, but her attitude was, "I tore it up."
 
 
 24
 Coupled with the letters, that's very strong evidence, not just of an intent to disregard the subpoena, but an attempt to avoid appearance as a witness and to avoid any involvement with the trial in which Robert Scott was a defendant.
 
 
 25
 J.A. 108-09.
 
 
 26
 Thereafter, following the preparation of a presentence report, the district court sentenced defendant to three years probation on November 20, 1992. The order of judgment was entered on January 5, 1993. This timely appeal followed.
 
 II.
 
 27
 At oral argument, counsel for defendant conceded that defendant was guilty of contempt if the subpoena which she failed to honor was valid. See 18 U.S.C. Sec. 401. Therefore, we will proceed to address the second issue.
 
 
 28
 Defendant argues that the district court erred in finding her guilty of criminal contempt because the subpoena was invalid. Defendant asserts that the subpoena ad testificandum was invalid because it did not direct her to appear at the eleventh floor courtroom in the federal building in Memphis at 9:30 a.m. where the trial of Robert Scott was being held, but instead directed her to appear at the office of the United States Attorney on the tenth floor at 9:00 a.m.. Defendant asserts that the subpoena was invalid on its face because it commanded her to appear at the United States Attorney's office at a time when the district court was not in session in the Scott case.
 
 
 29
 "A party who chooses to subject himself to the risk of fines and imprisonment due to contempt can contest the validity of a subpoena." In re Grand Jury 87-3 Subpoena Duces Tecum, 884 F.2d 772, 774 (4th Cir.1989), cert. denied, 496 U.S. 925 (1990), and rev'd on other grounds sub nom. United States v. R. Enters., Inc., 498 U.S. 292 (1991). "One should not be held in contempt under a subpoena that is part good and part bad. The burden is on the court to see that the subpoena is good in its entirety and it is not upon the person who faces punishment to cull the good from the bad." Bowman Dairy Co. v. United States, 341 U.S. 214, 221 (1951).
 
 
 30
 Rule 17 of the Federal Rules of Criminal Procedure permits a subpoena ad testificandum or a subpoena duces tecum to be issued only for the purpose of compelling the attendance of witnesses or the production of evidence at a formal proceeding. United States v. Keen, 509 F.2d 1273, 1275 (6th Cir.1975) (per curiam). Rule 17 provides in relevant part:
 
 
 31
 (a) A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served.
 
 
 32
 We note that the subpoena complied with the technical requirements of Rule 17(a).
 
 
 33
 The cases cited by defendant are distinguishable from the present situation. For instance, in Keen, the "government attorney obtained blank subpoenas from the district court clerk and issued them to prospective trial witnesses commanding attendance at a pretrial interview at his office." 509 F.2d at 1274. In this case, there has been no allegation from defendant that the government used the subpoena as a ruse to obtain a pretrial interview or statement from her. Indeed, defendant had already testified, pursuant to a similar subpoena, before the grand jury which investigated the Scott case, and she had been granted use immunity from the government in exchange for her grand jury testimony. Thus, the government was aware of the nature of any potential trial testimony on the part of defendant, and a pretrial interview would seem to be unnecessary.
 
 
 34
 Moreover, although defendant places great emphasis on the fact that she was ordered to report to the United States Attorney's office at a time when the district court was not in session in the Scott case, the evidence shows that the district court courtroom and the United States Attorney's office were within the same building and only one floor apart and that the subpoena required defendant to report to the United States Attorney's office a mere 30 minutes before the scheduled start of the trial in the Scott case. As the district court's order stated and the government now concedes, it is a better practice for the subpoena to list the time of trial and the courtroom as the place where the defendant is to appear.[1] Nonetheless, the logical conclusion in this case is that the United States Attorney was simply trying to assemble the witnesses in the Scott trial at his office and escort them to the witness room in the vicinity of the eleventh floor courtroom shortly before the start of the Scott trial.
 
 
 35
 In Durbin v. United States, 221 F.2d 520 (D.C.Cir.1954), the defendant "reported as requested in the subpoena ... at the United States Attorney's office on December 10, 11, 12 and 17." Defendant "was never taken before the grand jury, which recessed on December 18." Instead, each time the defendant reported he was taken to the United States Attorney's office where he was questioned and gave two written statements. The Assistant United States Attorney later admitted that "he did not take [defendant] before the grand jury ... because he was not satisfied with [his] statement." Id. at 522. Obviously, the facts in Durbin are distinguishable from the present case.
 
 
 36
 Similarly, in United States v. Standard Oil Co., 316 F.2d 884, 897 (7th Cir.1963), another case relied on by defendant, the "government was issuing subpoenas to compel witnesses ... to come, not to the courtroom, but to the United States Attorney's office at hours when the court was not in session." The witnesses were then interrogated by government counsel, and when one of the witnesses requested to have his counsel present during the questioning, he was told he could not do so. Id. Again, the facts in Standard Oil are distinguishable from this case.
 
 
 37
 In sum, there is no evidence in this case that the United States Attorney sought to misuse the subpoena to obtain an impermissible pretrial interview with the defendant. Rather, the conclusion is inescapable that the government's purpose in filling out the subpoena as it did was to obtain defendant's attendance at the Scott trial. Further, defendant's failure to appear at the Scott trial was due to her destruction of the subpoena immediately after it was served, and not as the result of any confusion from the manner in which the subpoena was filled out. Therefore, we conclude that the district court did not err in finding that the subpoena was valid.
 
 III.
 
 38
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 See also United States v. Stirone, 168 F.Supp. 490 (W.D.Pa.1957), aff'd, 262 F.2d 571 (3d Cir.1958), rev'd on other grounds, 361 U.S. 212 (1960) (In some instances, subpoenas were issued commanding witnesses to testify at the offices of the United States Attorney in Pittsburgh, Pennsylvania, rather than a district court courtroom. Although the district court disapproved of the practice, it found that the practice was harmless error, where the United States Attorney informed the court that the subpoenas were issued in that form solely for the purpose of keeping proper records for the payment of witness fees and there was no averment or proof of ulterior purpose or prejudice.)