Nos. 99,951; 99,972; 100,042

GEORGE R. TILLER, M.D., and WOMEN'S HEALTH CARE SERVICES, INC., *Petitioners*, v. HON. MICHAEL CORRIGAN, PRESIDING JUDGE, and HON. PAUL BUCHANAN, ASSIGNED SENIOR JUDGE, BOTH OF THE EIGHTEENTH JUDICIAL DISTRICT COURT, SEDGWICK COUNTY, KANSAS, *Respondents*.

JANE DOE and ANN ROE, ON BEHALF OF THEMSELVES AND SIMILARLY SITUATED PATIENTS, *Petitioners*, v. HON. MICHAEL CORRIGAN, PRESIDING JUDGE, and HON. PAUL BUCHANAN, ASSIGNED SENIOR JUDGE, BOTH OF THE EIGHTEENTH JUDICIAL DISTRICT COURT, SEDGWICK COUNTY, KANSAS, *Respondents*.

STEPHEN N. SIX, KANSAS ATTORNEY GENERAL, *Petitioner*, v. THE HONORABLE MICHAEL CORRIGAN and PAUL BUCHANAN, JUDGES OF THE EIGHTEENTH JUDICIAL DISTRICT COURT, SEDGWICK COUNTY, KANSAS, *Respondents*.

(182 P.3d 719)

Opinion filed May 6, 2008.

*Lee Thompson*, of Thompson Law Firm, LLC, of Wichita, argued the cause, and *Erin C. Thompson*, of the same firm, and *Daniel E. Monnat* and *Laura Shaneyfelt*, of Monnat & Spurrier, Chartered, of Wichita, were with him on the brief for petitioners George R. Tiller, M.D., and Women's Health Care Services, P.A.

*Bonnie Scott Jones*, of Center for Reproductive Rights, of New York, New York, argued the cause, and *Michelle Movahed*, of the same firm, and *Jim Lawing*, of Wichita, were with her on the brief for petitioners Jane Doe, Ann Roe, Sarah Coe, and Paula Poe.

*Michael C. Leitch*, deputy attorney general, argued the cause, and *Veronica L. Dersch*, assistant attorney general, was with him on the brief for petitioner Attorney General Stephen N. Six.

*David Lowden*, chief appellate attorney, of Sedgwick County District Attorney's office, argued the cause for respondent the Eighteenth Judicial District, Sedgwick County.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, argued the cause for respondents Honorable Michael Corrigan and Honorable Paul Buchanan.

*Joel L. Oster*, *Kevin H. Theriot*, and *W. Jesse Weins*, of Alliance Defense Fund, of Leawood, and *Benjamin W. Bull*, of Alliance Defense Fund, of Scottsdale, Arizona, were on the brief for *amicus curiae* Michelle Armesto.

*Richard A. Macias*, of Wichita, was on the brief for *amicus curiae* Kansans for Life.

The opinion of the court was delivered by

JOHNSON, J.: These three consolidated original actions in mandamus were prompted by subpoenas duces tecum issued by a Sedgwick County grand jury summoned in response to a citizen petition under K.S.A. 22-3001, which called for investigation of alleged illegal abortions and other violations of the law by George

R. Tiller, M.D., and others performing professional services at Women's Health Care Services, Inc. (WHCS), in Wichita. The respective Petitioners are: (1) George R. Tiller, M.D., and WHCS; (2) Jane Doe, Ann Roe, Sarah Coe, and Paula Poe, on behalf of themselves and similarly situated patients (Patients); and (3) Stephen N. Six, Kansas Attorney General (AG).

The subpoenas duces tecum that remain under challenge in this consolidated action are as follows:

A. A subpoena signed by Judge Michael Corrigan on or about January 22, 2008, identifying Ann Swegle (Deputy District Attorney) as attorney for the plaintiff, and directing the records custodian for WHCS to appear at the Sedgwick County Courthouse on February 1, 2008, at 9 a.m. to testify on behalf of the plaintiff, and further reciting:

"DUCES TECUM:
"Copies of all health care records of each patient who received an abortion at Women's Health Care Services, Inc., or Women's Health Care Services, P.A., from July 1, 2003, through January 18, 2008, when the gestational age of each patient's fetus was determined to be 22 weeks or more, specifically including all records required to be made or maintained pursuant to K.S.A. 65-6703.*
"*Counsel for Women's Health Care Services, Inc., may redact all personal identity indicators from the copies of the records for each patient including patient name; the day and month of the patient's birth; patient's social security number; photocopies of any patient identity documents; any insurance policy information; identification of any individuals accompanying the patient to Women's Health Care Services; patient's residential address; patient's telephone number(s); patient's occupation; and patient's emergency contact information."

The subpoena specifically stated that it required the personal attendance of the business records custodian and the production of original records and that delivering copies of the records to the court clerk would not be deemed sufficient compliance with the subpoena. Reiterating that point, the subpoena stated: "A custodian of the records must personally appear with the original records."

B. A subpoena signed by Judge Michael Corrigan on January 23, 2008, identifying Swegle as attorney for the plaintiff, and directing the records custodian for WHCS to appear at the Sedgwick County

Courthouse on February 1, 2008, at 9 a.m. to testify on behalf of the plaintiff, and further reciting:

"DUCES TECUM:

"Copies of all health care records of each patient who consulted a physician or physicians at Women's Health Care Services, Inc. or Women's Health Care Services, P.A. from July 1, 2003, through January 18, 2008, when the gestational age of each patient's fetus was determined to be 22 weeks or more but the patient did not receive an abortion because there was not a determination that a continuation of the patient's pregnancy would cause a substantial and irreversible impairment of a major bodily function by two physicians who were not legally and financially affiliated.°

"°Counsel for Women's Health Care Services, Inc. may redact all personal identity indicators from the copies of the records for each patient including patient name; the day and month of the patient's birth; patient's social security number; photocopies of any patient identity documents; any insurance policy information; identification of any individuals accompanying the patient to Women's Health Care Services; patient's residential address; patient's telephone number(s); patient's occupation; and patient's emergency contact information."

As with the first subpoena, this one specifically required the personal attendance of the business records custodian and the production of the original records.

C. A subpoena signed by Judge Michael Corrigan on January 30, 2008, identifying Swegle as attorney for the plaintiff, and directed to Veronica Dersch (in the Office of the Attorney General), commanding an appearance in the Sedgwick County Courthouse at 9 a.m. on February 6, 2008, to testify on behalf of the plaintiff, and further reciting:

"DUCES TECUM copies of all health care records obtained from Women's Health Care Services, P.A., in connection with subpoenas issued in an inquisition commenced by Attorney General Phil Kline and referenced in *Alpha Medical Center v. Honorable Richard Anderson*, 280 Kan. 903 (2006), which relate to abortions performed on or after July 1, 2003, where the gestational age of each fetus was determined to be 22 weeks or more."

Tiller and WHCS moved to quash the two subpoenas directed at WHCS's records custodian, claiming they encompassed more than 2,000 patient records and thus subjected the recipient to an undue burden, as contemplated by K.S.A. 60-245(c)(3)(A)(iv). Further, movants asserted that the subpoenas did not comply with the dictates of *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 128 P.3d

364 (2006), which set forth a procedure to protect the privacy rights of abortion clinic patients.

Separately, the Patients moved to intervene and to quash the subpoenas because they imposed an unjustified and profound intrusion on all similarly situated patients' privacy rights. In the alternative, if the court refused to quash the subpoenas, the Patients requested that a protective order be entered to narrow the content of the files to that which is necessary to the investigation and to safeguard the records against unauthorized disclosures beyond the secret grand jury proceedings.

Judge Paul Buchanan overruled both motions to quash. Further, the court denied a request to replace patient file numbers with another means of identification, notwithstanding the assertion that patient numbers could lead to the identification of patients. Finally, the court refused to enter a protective order. Although the court apparently believed that application of the *Alpha* holding was limited to an inquisition under K.S.A. 22-3101 *et seq.*, and thus inapplicable to a grand jury proceeding under K.S.A. 22-3001 *et seq.*, the court did provide that the files would be reviewed by an independent attorney and independent physician before the district attorney could present the records to the grand jurors. However, the court did not specify the scope of this independent review.

Tiller and WHCS filed a petition in mandamus with this court, seeking an order directing the district court to quash the subpoenas or, in the alternative, declaring the grand jury statutes, K.S.A. 22-3001 *et seq.*, unconstitutional and ordering the district court to disband the grand jury. The Patients filed a separate petition in mandamus, seeking to quash the subpoenas or, in the alternative, to protect their privacy interest. We stayed enforcement of the subpoenas pending resolution of the mandamus actions.

Meanwhile, the AG received a subpoena duces tecum for the 30 patient records that his office is using in connection with an ongoing prosecution of Tiller in the Sedgwick County District Court. Those records are a subset of the records sought by this grand jury from WHCS and are the patient records which were the subject of the *Alpha* holding. The AG filed a motion with the district court to quash the subpoena or, in the alternative, to stay

its enforcement until resolution of the pending mandamus actions. The district court summarily overruled the motion, finding that the grand jury did have the power to issue document subpoenas. The AG then filed his separate petition in mandamus with this court, and we stayed enforcement of the subpoena pending resolution of the mandamus actions.

Pursuant to the parties' request, this court consolidated the three mandamus actions, set a supplemental briefing schedule, and conducted oral arguments on April 8, 2008. In recognition of the time constraints applicable to a grand jury under K.S.A. 22-3013(1), this court has attempted to expedite the resolution of these actions. Accordingly, our written decision resolves the issues without an expansive discussion of all of the points raised by the parties.

## DISTRICT COURT RULINGS

Judge Buchanan's rulings from the bench were rather cryptic. In their consolidated answer and response to the petitions in mandamus, the Respondents assert that Judge Buchanan's oral rulings on the motions to quash included the following holdings:

(1) A grand jury called in response to a citizen petition becomes a grand jury of the district court;

(2) K.S.A. 60-245(c)(3)(A)(iv), which provides that a court shall quash or modify a subpoena which subjects a person to undue burden, does not apply to grand jury proceedings;

(3) grand juries have the power and authority to issue duces tecum subpoenas; and

(4) the scope of a grand jury investigation may reach to the limits of due process (recognizing that a grand jury investigation is bounded by some constitutional restraints).

The district court's rulings were not memorialized in journal entries, but rather simply noted on handwritten motion minute sheets. Thus, we have scant insight into the rationale for the district court's conclusions. We intuit that Judge Buchanan believed that he was required to issue the subpoenas, unless they violated due process.

*TERMINAL ISSUES*

Certain threshold issues were raised which, if meritorious, would end the inquiry. Specifically, Tiller and WHCS challenge the constitutionality of the citizen-petition grand jury statute, and the AG asserts that a grand jury has no authority to issue a subpoena duces tecum.

*Constitutionality*

Initially, Tiller and WHCS asserted that the investigation of crime is an executive function, so that permitting the citizenry to petition to summon a grand jury violated the separation of powers doctrine. In supplemental briefing, these Petitioners acknowledged that grand jury investigations are also within the province of the judiciary. However, they still suggest that the legislature's approval of citizen-petition grand juries invades the province of the two other branches of government. We disagree.

At oral argument, these Petitioners conceded that the constitutionality of the statute could be upheld if construed to provide some level of government oversight of the grand jury. See *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006) (if there is any reasonable way to construe a statute as constitutional, the court has a duty to do so). We perceive that the grand jury statutes contemplate such oversight by the judiciary.

We acknowledge that K.S.A. 22-3001 mandates the summoning of a grand jury upon a valid citizen petition. However, upon the submission of the petition, the role of the citizenry in the grand jury process ceases. The judge or judges of the district court of the county where the petition is filed are to review the validity of the petition and order the summoning of the grand jury. K.S.A. 22-3001(2). The court summons these jurors in the same manner as it utilizes for petit juries. K.S.A. 22-3001(3). Additionally, the judge who summoned the grand jury assumes the duty to charge the grand jurors, giving them such information as the judge deems proper and as is required by law regarding the duties of the grand jurors and any criminal charges known to the court and likely to come before the grand jury. K.S.A. 22-3005(1). Furthermore, the district court fixes the compensation of the certified shorthand re-

porter and must approve the grand jury's employment of special counsel, investigators, or the incurring of other expenses for services and supplies. K.S.A. 22-3006(2), (3). The district court also has the authority to enforce compulsory process. K.S.A. 22-3008(2). It is the district court that decides whether a witness must answer the grand jury's questions, K.S.A. 22-3008(3), and the court may grant immunity to witnesses. K.S.A. 22-3008(5)(a). Finally, the district court controls the disclosure of information from the grand jury. K.S.A. 22-3012.

In short, the statutes clearly indicate that the judiciary is to assume the oversight of the grand jury process once a petition is filed. Any claim that the process is being abused does not follow from an unconstitutional legislative invasion of the judicial or executive function, but rather from any failure of the judiciary to exercise its oversight function. The citizen-petition grand jury statutes are not unconstitutionally infirm on their face.

### Grand Jury Authority to Issue Subpoenas Duces Tecum

The AG contends that the grand jury statutes do not specifically authorize the issuance of subpoenas duces tecum, and, therefore, the grand jury had no authority to compel the AG to produce the patient records. The grand jury statute speaks to the issuance of "subpoenas and other process to bring witnesses to testify before the grand jury." K.S.A. 22-3008(1).

In *Alpha*, we observed that the inquisition statute, K.S.A. 2004 Supp. 22-3101, did not specifically mention subpoenas duces tecum, but noted that such subpoenas are regularly used in criminal cases across the state. 280 Kan. at 913. Furthermore, K.S.A. 22-3214(1) provides that prosecutors and defendants in criminal prosecutions may "use . . . subpoenas and other compulsory process to obtain the attendance of witnesses," *i.e.*, the general criminal statute itself does not specifically mention subpoenas duces tecum.

Accordingly, in *Alpha* we determined that the statutory reference to subpoenas in connection with inquisitions permitted subpoenas calling for the production of documents as well as those calling for witness testimony. 280 Kan. at 914. We perceive no

logical reason to retreat from that interpretation when considering subpoenas issued in a grand jury investigation, especially when the applicable statute here refers to "other process." In short, we conclude that grand juries possess the authority to issue subpoenas duces tecum.

## STANDARD FOR QUASHING SUBPOENAS

We discern, collecting all of the Petitioners' arguments, that the Petitioners believe the subpoenas should be quashed for the following reasons:

(1) The grand jury has not met the threshold requirements set forth in *Alpha, i.e.*, that there is reasonable suspicion to believe the subpoenaed records will contain evidence of a crime and that the basis for the alleged criminal conduct is on firm legal ground.

(2) The number of records which are encompassed by the subpoenas makes compliance unduly burdensome, especially in light of the time, money, and effort required to redact patient-identifying information prior to production.

(3) Tiller and WHCS have been targeted for investigation out of malice, and the subpoenas have been issued with an intent to harass.

(4) The subpoenas invade the patients' constitutional privacy interests in their confidential abortion clinic records.

### Relevance

The Respondents suggest that the considerable latitude traditionally afforded to federal grand juries dictates against applying *Alpha*'s threshold requirements for an inquisition subpoena to the question of quashing grand jury subpoenas. In their answer to the mandamus petition, the Respondents declared that "investigatory subpoenas are not subject to strict relevancy requirements, let alone requirements for a showing of reasonable suspicion or probable cause." At oral argument, Respondents apparently softened their position, acknowledging that grand jury subpoenas must meet a threshold showing of relevance.

The Respondents, as well as the other parties, rely heavily on cases dealing with federal grand juries. The federal system has

some significant differences from our state grand jury system. For instance, in the federal system the prosecutor has the responsibility for deciding which witnesses to call, which evidence to subpoena, and which portions of the evidence will be presented to the grand jury. See 1 Beale, Bryson, Felman & Elston, *Grand Jury Law and Practice* § 6:2, pp. 6-11 (2d ed. 2005). Thus the federal prosecutor, a licensed attorney subject to professional and ethical obligations, operates as the initial gatekeeper on the propriety of a particular subpoena. Furthermore, our grand jury provisions do not contain a counterpart to Federal Rule of Criminal Procedure 17(c), which specifically controls the issuance of subpoenas duces tecum and provides in relevant part:

> "A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive."

Notwithstanding the differences in the federal and state systems, we do find some guidance in the manner in which the United States Supreme Court has viewed the reasonableness requirement of Federal Rule of Criminal Procedure 17(c). In *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 112 L. Ed. 2d 795, 111 S. Ct. 722 (1991), a federal grand jury had been investigating allegations of interstate transportation of obscene materials for approximately 2 years. It issued a series of subpoenas to three companies, seeking a variety of corporate books and records, as well as copies of videotapes alleged to have been shipped to retailers in the area. All three companies moved to quash the subpoenas, arguing that the subpoenas called for the production of materials which were irrelevant to the grand jury's investigation and that the enforcement of the subpoenas would likely infringe upon the companies' First Amendment rights. The trial court refused to quash the subpoenas.

Previously, in *United States v. Nixon*, 418 U.S. 683, 700, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974), the Supreme Court had held that in order for a Rule 17(c) trial subpoena to be valid, the prosecutor had the burden of clearing three hurdles: (1) relevancy, (2) admissibility, and (3) specificity. In the *R. Enterprises* case, the

Court of Appeals for the Fourth Circuit found that the *Nixon* standards were equally applicable to grand jury subpoenas; determined that the Government had failed to carry its burden on relevancy, admissibility, and specificity; and quashed the subpoenas. *In re Grand Jury 87-3 Subpoena Duces Tecum*, 884 F.2d 772, 776-77 (4th Cir. 1989). The Supreme Court granted certiorari to determine whether the Court of Appeals had applied the proper standard.

The Supreme Court looked to the unique role that a grand jury occupies as an investigatory body charged with the responsibility of determining whether a crime has been committed. Accordingly, the Court determined that "[a] grand jury subpoena is thus much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged." *R. Enterprises*, 498 U.S. at 297. After reviewing its precedent, the Court opined that "[t]he teaching of the Court's decisions is clear: A grand jury 'may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.' " 498 U.S. at 298. In other words, the multi-factor test announced in *Nixon* did not apply in the context of a grand jury subpoena.

However, the Supreme Court announced that "[t]he investigatory powers of the grand jury are nevertheless not unlimited. [Citations omitted.] Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." 498 U.S. at 299. The Court then proceeded to define the extent to which Rule 17(c) imposed a reasonableness limitation on grand jury subpoenas. The Court began "by reiterating that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority," 498 U.S. at 300, and that "the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." 498 U.S. at 301. The Court then concluded that where the subpoena is challenged on relevance grounds, "the motion to quash must be denied unless the district court deter-

mines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." 498 U.S. at 301.

Interestingly, the Court acknowledged that the burden on the challenging party to show unreasonableness may be difficult without knowing the general subject matter of the investigation. Accordingly, the Court noted that a district court "may be justified in a case where unreasonableness is alleged in requiring the Government to reveal the general subject of the grand jury's investigation before requiring the challenging party to carry its burden of persuasion." 498 U.S. at 302. The Supreme Court left it to the district courts "to craft appropriate procedures that balance the interests of the subpoena recipient against the strong governmental interests in maintaining secrecy, preserving investigatory flexibility, and avoiding procedural delays." 498 U.S. at 302. By way of example, "a district court may require that the Government reveal the subject of the investigation to the trial court *in camera*, so that the court may determine whether the motion to quash has a reasonable prospect for success before it discloses the subject matter to the challenging party." 498 U.S. at 302.

Obviously, the "no reasonable possibility of relevance" standard is less restrictive than *Alpha*'s reasonable suspicion standard. See 280 Kan. 903, Syl. ¶ 3. However, the record does not suggest that Judge Buchanan applied any relevance standard at all in considering the motions to quash. Therefore, upon remand, the district court is directed to determine and make specific findings on the record as to whether there is no reasonable possibility that the patients' records being sought will produce information relevant to the general subject of the grand jury's investigation. Consistent with the procedure described in *R. Enterprises*, if necessary, the judge may require the prosecuting attorney to share with the court, *in camera*, the nature of the information the grand jury is seeking from the patients' records.

By way of example, neither the Respondents nor the Deputy District Attorney proffered to this court any compelling reason why the grand jury needs the records of any woman who did not have

an abortion because two independent physicians did not make the requisite medical findings. The Respondents' assertion that such records would serve to clear Tiller and WHCS of any crime with respect to those patients is simply unpersuasive. The ongoing prosecution by the AG, based upon a violation of the statutory requirement for an independent medical opinion in certain cases, would be unaffected by any determination the grand jury might make in that regard.

Similarly, one cannot readily perceive the relevance to the grand jury of the patient records involved in the AG's ongoing prosecution. Any determination the grand jury may make with respect to the charges that it believes should be brought on those records would not be binding on the AG and might not be amenable to prosecution on a separate indictment brought by the grand jury. See K.S.A. 21-3108(2)(a) (compulsory joinder rule).

To clarify, the first step for the district court will be to assess whether each of the subpoenas meets the relevance threshold as articulated in this opinion. If not, the court should quash the subpoena or modify it to comport with the relevance standard. If a subpoena passes muster under the relevance test, the court will then move on to consider the remaining challenges to that subpoena.

*Undue Burden*

The majority in R. *Enterprises* was careful to point out that the subpoena recipients in that case had not claimed that compliance with the subpoenas would be overly burdensome, and the majority did not consider that aspect of the subpoenas. 498 U.S. at 301. Likewise, the majority did not pass on the movants' First Amendment issue. 498 U.S. at 303.

In his concurring opinion, Justice Stevens stressed "that the Court's opinion should not be read to suggest that the deferential relevance standard the Court has formulated will govern . . . in every case, no matter how intrusive or burdensome the request." 498 U.S. at 306. Therefore, the concurrence's discussion of other challenges to a grand jury subpoena duces tecum provides us with some guidance on our remaining issues.

The concurring opinion began by opining:

"This [Federal Rule of Criminal Procedure 17(c)] requires the district court to balance the burden of compliance, on the one hand, against the governmental interest in obtaining the documents on the other. A more burdensome subpoena should be justified by a somewhat higher degree of probable relevance than a subpoena that imposes a minimal or nonexistent burden." 498 U.S. at 303-04.

Procedurally, the concurrence agreed with the majority that the burden of establishing that compliance would be unreasonable or oppressive rests on the subpoena recipient, who must move to quash. 498 U.S. at 305. Justice Stevens then described the movant's task:

"The moving party has the initial task of demonstrating to the Court that he has some valid objection to compliance. This showing might be made in various ways. Depending on the volume and location of the requested materials, the mere cost in terms of time, money, and effort of responding to a dragnet subpoena could satisfy the initial hurdle. Similarly, if a witness showed that compliance with the subpoena would intrude significantly on his privacy interests, or call for the disclosure of trade secrets or other confidential information, further inquiry would be required. Or, as in this case, the movant might demonstrate that compliance would have First Amendment implications." 498 U.S. at 305.

The concurrence opined that the district court did not need to inquire into the relevance of subpoenaed materials until after the moving party had made the initial showing of a valid objection. 498 U.S. at 305. However, once a showing was made that a subpoena was intrusive or burdensome, it appears the concurrence would depart from the majority's strict "no reasonable possibility of relevance" standard. The concurrence would opt for a more flexible standard, *e.g.*, "the degree of need sufficient to justify denial of the motion to quash will vary to some extent with the burden of producing the requested information." 498 U.S. at 305.

We find this approach to be persuasive. If the challenge to a subpoena is based solely on the material being irrelevant, the motion to quash must be denied unless there is no reasonable possibility that the category of materials sought will produce information relevant to the general subject of the grand jury's investigation. However, if the subpoena recipient makes an initial showing that the subpoena is overly burdensome or intrudes on a privacy inter-

est, the district court must balance the grand jury's need for the subpoenaed material against the burden or intrusion upon the subpoena recipient.

At the district court hearing, Tiller and WHCS argued that they estimated, from previous experience in redacting and copying patient records, it would take 5,000 person hours to prepare the 2,000 patient records subject to the subpoenas. They estimated the cost to redact and copy those records would be $250,000.

While the Deputy District Attorney and the Respondents question the accuracy of those estimates, one simply cannot deny that the time, money, and effort required to redact and copy 2,000 patient records is burdensome. Likewise, their argument that the grand jury would accept fewer than all of the subpoenaed records is unsupported by the record. Although Judge Buchanan ruled that Tiller and WHCS could incrementally comply with the subpoena by providing the patient records in groups of 50, the subpoenas have not been modified and still command the production of all of the patients' records encompassed by the descriptions in the subpoenas.

Accordingly, we direct the district court to assess the degree of need the grand jury has in obtaining the material described in each subpoena and to balance that need against the burden imposed upon Tiller and WHCS. To accomplish that balancing analysis, the court may need to know what information the grand jury is seeking from the patients' records and the crime(s) which the grand jurors believe may be revealed by that information. If so, such information may be presented to the court *in camera* through the prosecuting attorney.

If the district court determines that the scales tip toward the subpoenas being overly burdensome, the judge should quash the subpoenas or modify them accordingly. If the district court determines that the State's interest is compelling enough to outweigh the burden on the subpoena recipient, the court should move to the next issue.

### Harassment

Tiller and WHCS complain that they have been maliciously targeted for investigation and that the subpoenas are intended to harass the recipients and disparage their reputation. These Petitioners point out that they were the targets of a 2004 inquisition commenced by the AG and a 2006 grand jury investigation which was also charged with investigating, *inter alia*, illegal late-term abortions. For factual support, they point to the declarations of the special interest groups that spearheaded the petition drive to summon this grand jury. For legal support, they rely on the language in the *R. Enterprises* majority opinion that grand juries may not "select targets of investigation out of malice or an intent to harass." 498 U.S. at 299.

Interestingly, in the *R. Enterprises* concurring opinion, Justice Stevens touched on the issue of harassment. Specifically, he opined that "further inquiry into the possible unreasonable or oppressive character of this subpoena should also take into account the entire history of this grand jury investigation, including the series of subpoenas that have been issued to the same corporations and their affiliates during the past several years." 498 U.S. at 307.

In this case, Judge Buchanan correctly noted that the grand jurors are not the same persons who led the petition drive. However, the court should consider that some of the records have been subject to discovery in the 2004 inquisition and that the previous grand jury investigation in 2006 resulted in no indictment. In other words, the court should satisfy itself that the grand jury has not engaged in an arbitrary fishing expedition and that the targets were not selected and subpoenas issued out of malice or with intent to harass. If so, the court should quash the subpoenas. Otherwise, the court should move to the final issue of the patients' privacy interests.

### Patients' Privacy Interests

The foregoing steps could pertain to any grand jury subpoena duces tecum. The constitutional privacy interests implicated by theses subpoenas present a unique circumstance requiring additional analysis. For instance, both the majority and concurring

opinions in *R. Enterprises* suggested that, upon remand, the lower court should separately address the movants' claim of a First Amendment infringement. 498 U.S. at 303, 306-07. However, the opinion does not give any particular guidance on how the potential for a violation of a subpoena recipient's or a third party's constitutional rights fits into the calculus. With respect to the patient privacy constitutional issue presented here, this court has previously laid out the appropriate procedure in *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 128 P.3d 364 (2006).

In *Alpha*, we identified three federal constitutional privacy interests that were subject to infringement by a subpoena for the production of abortion clinic patient records: (1) the right to maintain the privacy of certain information, (2) the right to obtain confidential health care, and (3) the fundamental right of a pregnant woman to obtain a lawful abortion without government imposition of an undue burden on that right. 280 Kan. at 919-20. However, we acknowledged that "an individual's right to informational privacy is not necessarily 'absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest.' [Citations omitted.]" 280 Kan. at 921.

Moreover, we stated the obvious proposition that the State has a compelling interest in pursuing criminal investigations. 280 Kan. at 921. Nevertheless, we intimated that the State's right to invade patient privacy for investigative purposes is likewise not absolute. Rather, we opined: "Our evaluation necessarily involves weighing of these competing interests, including the type of information requested, the potential harm in disclosure, the adequacy of safeguards to prevent unauthorized disclosure, the need for access, and statutory mandates or public policy considerations. [Citations omitted.]" 280 Kan. at 921.

The subpoenas before us involve the same privacy interests that were involved in *Alpha*. Indeed, some of the records sought are identical to those involved in *Alpha*. There, we opined that "[t]he type of information sought by the State . . . could hardly be more sensitive, or the potential harm to patient privacy posed by disclosure more substantial." 280 Kan. at 922. The rights of those patients are not diminished simply because the State actor currently

performing the investigatory function is a grand jury, rather than an AG or other prosecutor. The patients' side of the ledger has not changed.

Accordingly, we hold that the district court must consider the competing interests of the State and the patients, *i.e.*, the court must apply the balancing test set forth in *Alpha*. See also *In re Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002) (court must weigh a patient's privacy interest against the government's interest in obtaining the records in particular circumstances).

This means that if and when the district court settles on the scope of records for which there is a compelling State interest that justifies intrusions upon the patients' constitutional privacy rights, the court must permit WHCS to redact all patient-identifying information from the records to be produced. Contrary to Judge Buchanan's blanket ruling, patient-identifying information may include the number assigned each patient by WHCS, depending on how that number is designed. Obviously, this redaction requirement would preclude the production of the original patient records, and that portion of the original subpoenas must be modified in any event.

Upon receipt of the redacted patient records, the court shall refer the records to an independent attorney and independent physician. The attorney and physician shall be advised of the information the grand jury is seeking from the records and the possible crimes under consideration, so that they may redact all irrelevant information from the files, regardless of whether such additional redactions would be considered patient-identifying information. See *Alpha*, 280 Kan. at 925 (review by independent lawyer and physician "to eliminate information unrelated to the legitimate purpose of the inquisition").

Finally, the district court shall enter a protective order, prohibiting the distribution or dissemination of any information from the patient records outside the grand jury proceeding, including but not limited to witnesses appearing before the grand jury and experts to whom the records are referred. Obviously, disclosures may be made to the prosecuting attorney for use in the performance of

his or her duties, as permitted by K.S.A. 22-3012, which statute also speaks to circumstances under which the district court may permit disclosure.

In conclusion, the petitions for writs of mandamus are granted in part. The matter is remanded to the district court for further proceedings in accordance with this opinion.